IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN THE MATTER OF THE APPLICATION
OF THE UNITED STATES OF AMERICA
FOR AN ORDER AUTHORIZING THE
INITIAL INTERCEPTION OF WIRE
AND ELECTRONIC COMMUNICATIONS
TO AND FROM SPRINT CORP.
CELLULAR NUMBER (540) 327-0261 (**TP2**)
AND THE CONTINUED INTERCEPTION OF
ELECTRONIC COMMUNICATIONS FOR
FACEBOOK ACCOUNT IDS
100000756809234 (**FB1**) AND
100003308781682 (**FB2**)

3:20-MC-32

Case No._____

UNDER SEAL

APPLICATION

Lara K. Omps-Botteicher, Applicant and Assistant United States Attorney for

the Northern District of West Virginia, being duly sworn, states:

1.      Applicant is an "investigative or law enforcement officer" of the United States

within the meaning of Section 2510(7) of Title 18, United States Code; that is, an

attorney authorized by law to prosecute or participate in the prosecution of offenses

enumerated in Section 2516 of Title 18, United States Code. Applicant is also an

"attorney for the government," as defined in Rule 1(b) of the Federal Rules of Criminal

Procedure and, pursuant to Section 2516(3) of Title 18, United States Code, is

authorized to make an application to a federal judge of competent jurisdiction for an

order authorizing or approving the interception of wire and electronic

communications.

2.      This application seeks authorization for the interception of wire and electronic

communications of MICHAEL CHRISTIAN, MISTY JACKSON, MICHAEL BROWN,

2

MICHAEL MOODY, SAMANTHA ENGLE, MICHAEL PENDLETON, WILLIAM REDMAN, SHANE DIRTING, JOSHUA RUNKLES, JUSTIN CLINTON, JAIME CODDINGTON, KEONTA FRYE, UNSUB 6345, and other persons as yet unknown ("TARGET SUBJECTS") concerning possession with intent to distribute and distribution of a controlled substance, namely "molly," also known as MDMA, a Schedule I controlled substance, in violation of 21 U.S.C. § 841; use of a communication facility to further the commission of a felony-controlled substance offense, in violation of 21 U.S.C. § 843(b); conspiracy to possess with the intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. § 846; and interstate travel in aid of unlawful activity, in violation of 18 U.S.C. § 1952 ("TARGET OFFENSES"). The electronic communications (including images, video, and attachments) sent from, received by, or occurring over the TARGET FACEBOOK ACCOUNTS will likely include, but not be limited to, Facebook Messenger messages; private messages; chats; deleted messages; draft messages; all other communications and messages made or received; Wall postings; comments; status updates; links to photographs, articles and other items; event postings; "check ins"; and pending "Friend" requests.

3.      Pursuant to Section 2516 of Title 18, United States Code, John P. Cronan, a duly designated official of the Criminal Division, United States Department of Justice, having been specially designated by the Attorney General of the United States, pursuant to Order Number 4417-2019, dated March 25, 2019, has authorized

3

this application. Attached to this application is a copy of the Attorney General's Order

of Special Designation and the Memorandum of Authorization for this application.

4.      I have discussed all of the circumstances of the offenses and this application

with Task Force Officer Mathew Custer and have examined his affidavit, which is

attached to this application and is incorporated herein by reference.  Based upon that

affidavit, your Applicant states upon information and belief that:

5.      There is probable cause to believe that the TARGET SUBJECTS, and other

persons as yet unknown, have committed, are committing, and will continue to

commit the TARGET OFFENSES described above.

6.      There is probable cause to believe that particular wire and electronic

communications of MICHAEL CHRISTIAN, MISTY JACKSON, MICHAEL BROWN,

MICHAEL MOODY, SAMANTHA ENGLE, MICHAEL PENDLETON, WILLIAM

REDMAN, SHANE DIRTING, JOSHUA RUNKLES, JUSTIN CLINTON, JAIME

CODDINGTON, KEONTA FRYE, UNSUB 6345, and other persons as yet unknown

("TARGET INTERCEPTEES") concerning the TARGET OFFENSES will be obtained

through the interception of:

   a. Wire and electronic communications occurring to and from cellular

      telephone bearing the number (540) 327-0261, and accessed through

      International Mobile Subscriber Identity (IMSI) number

      312530013954685 ("TARGET TELEPHONE 2" or (**TP2**)), subscribed to

      MISTY JACKSON with subscriber address of 1084 S. Laurel Rd. London,

4

KY 40744, serviced by Sprint Corp. and used by JACKSON. (This address

is associated with the Sprint Headquarters)

b.  Electronic communications occurring to and from the Facebook account

number 100000756809234 (**FB1**) being used by MICHAEL CHRISTIAN

(referred to herein as "TARGET FACEBOOK ACCOUNT 1"); and

c.  Electronic communications occurring to and from the Facebook account

number 100003308781682 (**FB2**) being used by MISTY JACKSON

(referred to herein as "TARGET FACEBOOK ACCOUNT 2").[1]

7.      In particular, there is probable cause to believe that these communications will

concern the specifics of the TARGET OFFENSES, including (i) the nature, extent and

methods of operation of the TARGET SUBJECTS' unlawful activities; (ii) the identity

of the TARGET SUBJECTS, their accomplices, aiders and abettors, co-conspirators

and participants in their illegal activities; (iii) the receipt and distribution of narcotics

and money involved in those activities; (iv) the locations and items used in

furtherance of those activities; (v) the existence and locations of records relating to

those activities; (vi) the location and source of resources used to finance their illegal

activities; and (vii) the location and disposition of the proceeds from those activities.

In addition, the communications are expected to constitute admissible evidence of the

commission of the TARGET OFFENSES.

---

[1] TARGET FACEBOOK ACCOUNT 1 and TARGET FACEBOOK ACCOUNT
2 are referred to collectively as the "TARGET FACEBOOK ACCOUNTS."

8.     Normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ, as is described in further detail in the attached affidavit.

9.     The attached affidavit contains a full and complete statement of the facts concerning all previous applications known to me and the authorizing individual made to any judge for authorization or approval of the interception of the wire, oral, or electronic communications involving any of the same persons, facilities, or places specified in this application.

10.     There is probable cause to believe that TARGET TELEPHONE 2 and TARGET FACEBOOK ACCOUNTS have been, are being, and will continue to be used in connection with the commission of the TARGET OFFENSES.

        WHEREFORE, IT IS HEREBY REQUESTED, based on the allegations set forth in this Application and on the attached affidavit, that this Court issue an Order, pursuant to Section 2518 of Title 18, United States Code, authorizing Special Agents of the FBI and other duly authorized state and local law enforcement officers working under the supervision of the FBI, government personnel acting under the supervision of the FBI, and personnel acting under contract to and supervision of the FBI, to intercept wire and electronic communications to and from TARGET TELEPHONE 2 and electronic communications to and from the TARGET FACEBOOK ACCOUNTS.

        IT IS FURTHER REQUESTED that such interceptions shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others conduct their illegal activities, but may continue until all

6

communications are intercepted which fully reveal the manner in which the TARGET

SUBJECTS and others as yet unknown are committing the TARGET OFFENSES,

and which reveal fully the identities of their confederates, their places of operation,

and the nature of the conspiracy, but not to exceed a period of thirty (30) days

measured from the earlier of the day on which law enforcement officers first begin to

conduct an interception under this Order or ten (10) days after the Order is entered

as to TARGET TELEPHONE 2 and as to the TARGET FACEBOOK ACCOUNTS.

IT IS FURTHER REQUESTED that the authorization given is intended to

apply not only to TARGET TELEPHONE 2 number listed above, but also to any other

telephone number or telephone accessed through the above-referenced IMSI number,

and to any other IMSI number accessed through that target telephone number

referenced above, within the thirty-day period.  The authorization is also intended to

apply to TARGET TELEPHONE 2 number referenced above regardless of service

provider, and to background conversations intercepted in the vicinity of TARGET

TELEPHONE 2 while the telephone is off the hook or otherwise in use.

IT IS FURTHER REQUESTED that this Court order that Sprint Corp. or any

other subsequent service provider notify the Applicant immediately if and when the

IMSI, ESN/MEID/IMEI, or telephone number for TARGET TELEPHONE 2 is

changed or supplied to another service provider.

IT IS FURTHER REQUESTED that this Court issue an Order pursuant to

Section 2518(4) of Title 18, United States Code, that Sprint Corp., Facebook Inc., or

any other subsequent service provider of wire or electronic communication service, as

7

defined in Section 2510(15) of Title 18, United States Code, shall furnish the Federal

Bureau of Investigation ("FBI") forthwith all information, facilities, and technical

assistance necessary to accomplish the interceptions unobtrusively and with a

minimum of interference with the services that such provider is according the persons

whose communications are to be intercepted, and to ensure an effective and secure

installation of electronic devices capable of intercepting wire and electronic

communications over TARGET TELEPHONE 2 and electronic communications over

the TARGET FACEBOOK ACCOUNTS, with the service provider(s) being

compensated by the applicant for reasonable expenses incurred in providing such

facilities or assistance.

IT IS FURTHER REQUESTED, pursuant to 18 U.S.C. § 2518(3), that in the

event that TARGET TELEPHONE 2 and the TARGET FACEBOOK ACCOUNTS are

used outside the territorial jurisdiction of this Court, interceptions may continue in

the Northern District of West Virginia, where communications over TARGET

TELEPHONE 2 and the TARGET FACEBOOK ACCOUNTS will first be heard

and/or read and minimized.

IT IS FURTHER REQUESTED that, in the event that the Service Providers

change during the course of interception, interception may continue with the new

Service Providers without further Order of this Court. The United States will advise

this Court of the change of Service Providers in the periodic progress report submitted

to this Court.

8

IT IS FURTHER REQUESTED that, to avoid prejudice to the Government's criminal investigation, the Court order the above-named providers or any other provider of wire or electronic communication service and its agents and employees not disclose or cause a disclosure of this Order or the request for information, facilities, and assistance by the FBI or the existence of the investigation to any person other than those of its agents and employees who require said information to accomplish the services as ordered.  In particular, said provider(s) and any other provider of wire or electronic communication service to TARGET TELEPHONE 2 and electronic communications service to the TARGET FACEBOOK ACCOUNTS and their agents and employees should be ordered not make such disclosure to a lessee, telephone subscriber, or any TARGET SUBJECT, TARGET INTERCEPTEE, or participant in the intercepted communications.

IT IS FURTHER REQUESTED that this Court direct that its Order be executed as soon as practicable after it is signed, and that all monitoring of wire and electronic communications be conducted in such a way as to minimize the interception and disclosure of communications not relevant to the investigation, or otherwise criminal in nature.  Monitoring of conversations must immediately terminate when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119 of Title 18, United States Code.  Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named interceptees or any of their confederates, when identified, are participants in the conversation, unless it is

9

determined during a portion of the conversation already overheard that the conversation is criminal in nature.  If the conversation is minimized, the monitoring agent may spot-check to ensure that the conversation has not turned to criminal matters.  Special attention shall be given to minimize all privileged communications, including attorney-client privileged communications.

IT IS FURTHER REQUESTED that pursuant to 18 U.S.C. § 2518(5), in the event the intercepted communications are in a code or foreign language, and an expert in that code or foreign language is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.  In the event the translator is not a federal agent, the translator, whether a language-trained support employee or someone under contract with the Government, will be under the direct supervision of a federal agent.

IT IS FURTHER REQUESTED that this Court direct that all monitoring of electronic communications will be conducted in accordance with Chapter 119 of Title 18, United States Code.  Each electronic communication (i.e. text message) will be reviewed over a secure system, and based on the identities of the sender and recipient and the content of the message, monitoring personnel will determine as soon as practicable after interception whether the text message appears to be relevant to the investigation or otherwise criminal in nature.  If the message is not criminal in nature, the message will be marked "minimized" and not accessed by other members of the investigative team.  If the message appears to be privileged, it will be marked "privileged" and secured from access by other members of the investigative team.  If

10

a text message appears to be relevant to the investigation or otherwise criminal in nature, it will be marked "non-minimized" and may be shared with the other agents and monitors involved in the investigation. If a text message is marked "minimized" or "privileged," it will not be disseminated to members of the investigative team. All intercepted text messages will be sealed with the court upon the expiration of the court's Order authorizing the interception. It is anticipated that the monitoring location will not be staffed at all times, but will be staffed at regular hours, at which time intercepted communications will be monitored and read (including those intercepted at hours when the location was not staffed). However, even when unmanned, the monitoring location will be kept secured with access limited to only authorized monitoring personnel and their supervising agents.

IT IS FURTHER REQUESTED given that wire communications, those including a human voice, will not be monitored under the authority of this application for **FB1** and **FB2**, that any voice messages intercepted occurring over **FB1** and **FB2** will be minimized, and any videos that are intercepted will only be played with the sound muted. Electronic communications over the target phone will be intercepted, pursuant to the Communications Assistance for Law Enforcement Act ("CALEA"), 47 U.S.C. § 1001 *et seq.*, in part through receipt from the service provider of "packet data," an electronic data stream. That packet data stream, pursuant to CALEA, will be delivered to FBI's electronic communications collection system, and when certain technology (including VoIMS, VoLTE, 4G, and others) is employed by the cellular service provider, that packet data stream will include a complete copy of all voice calls

(which are wire communications) occurring over the target phone. Those voice calls in the packet data stream are duplicates of wire communications that may be intercepted through FBI's wire communications collection system and minimized in real-time. The packet data, including the copies of voice calls, cannot be minimized in real-time. Therefore, FBI will utilize a filter program in its electronic communications collection system that will automatically identify and block voice calls from being intercepted in the packet data stream by filtering them out of the packet data stream before they are recorded. Those voice calls in the packet data stream will not be "intercepted" within the meaning of 18 U.S.C. § 2510(4) (defining "intercept" as the "aural or other *acquisition*" of the contents of a communications) (emphasis added). However, on rare occasions, a voice call might not be filtered out of the packet data stream due to circumstances including unanticipated technology changes by the service provider or imperfect operation of the filter program. If a voice call is not filtered out and is recorded in FBI's electronic communications collection system, the call will not be monitored or otherwise accessed through the electronic communications presentation system, and FBI will preserve and seal such communications in the same manner as other intercepted electronic communications.

IT IS FURTHER REQUESTED that, pursuant to Title 18, United States Code, Section 2703(c)(1)(B) and (d), the Court issue an Order directing that Sprint Corp. or any other subsequent service provider, providers of electronic communications services as defined in Title 18, United States Code, Section 2510(15), shall disclose to the applicant and the FBI the following information relevant to this investigation, as

set forth in Title 18, United States Code, Section 2703(c)(2)(A)-(F), pertaining to

TARGET TELEPHONE 2 and  the TARGET FACEBOOK ACCOUNTS and the

telephone numbers assigned to or used by telephones or other devices that place or

send wire or electronic communications to, or receive wire or electronic

communications from, TARGET TELEPHONE 2 and the TARGET FACEBOOK

ACCOUNTS, within 24 hours of said request, including weekends and holidays, there

being offered specific and articulable facts showing that there are reasonable grounds

to believe that the information sought is relevant and material to an ongoing criminal

investigation as set forth more fully in the affidavit: subscriber name; subscriber

address; historical local and long distance telephone connection records, or records of

session times and durations; length of service (including start date) and types of

services utilized; telephone or instrument number or other subscriber identification

number (including but not limited to International Mobile Subscriber Identity

number, Mobile Subscriber Identity Number, International Mobile Equipment

Identity number, Universal Mobile Equipment Identity number, Electronic Serial

Number, and Mobile Equipment Identity number); and means and source of payment

for service (including any credit card or bank account number).

IT IS FURTHER REQUESTED that, pursuant to Title 18, United States Code,

Sections 3122, 3123, and 3124, the Court issue an Order directing that the FBI shall

install and use a pen register and trap and trace device (including but not limited to

"caller identification") for up to 60 days on TARGET TELEPHONE 2 and the

TARGET FACEBOOK ACCOUNTS, to acquire and collect dialing, routing,

addressing, and signaling information   associated with each wire or electronic communication to and from TARGET TELEPHONE 2 and the TARGET FACEBOOK ACCOUNTS, including, but not limited to: a) any unique identifiers associated with the cell phones, including ESN, MEID, IMSI, IMEI, or MIN; b) source and destination telephone numbers and email addresses; and c) date, time and duration of all communications.   This should include dialing, routing, addressing, or signaling information transmitted on the Service Provider's packet-switched data network by "push-to-talk" technology, a.k.a. "Direct Connect," to provide digital two-way communication.  The Applicant certifies that the information likely to be obtained by the installation and use of the pen register and trap and trace device is relevant to the ongoing criminal investigation conducted by the FBI and discussed in the affidavit.  Pursuant to Title 18, United States Code, Sections 3123(b)(2) and 3124, it is requested that the Service Provider(s) shall furnish all information, facilities, and technical assistance necessary to accomplish the installation of the pen register and trap and trace device.  The Service Provider(s) shall be reasonably compensated by the FBI for such reasonable expenses incurred in providing such facilities and assistance.

IT IS FURTHER REQUESTED, pursuant to 18 U.S.C. § 2703(c)(1)(A), Federal Rule of Criminal Procedure 41, and 18 U.S.C. § 3122-24, that the Court issue an Order authorizing agents of the FBI to ascertain the physical location of TARGET TELEPHONE 2 and the TARGET FACEBOOK ACCOUNTS during the authorized period of interception and to obtain information regarding the location of TARGET

14

TELEPHONE 2 and the TARGET FACEBOOK ACCOUNTS during the 60 days

preceding the date that the order is entered (the "Requested Location Information").

As explained in more detail in the Affidavit, there is probable cause to believe that

the location of TARGET TELEPHONE 2 and the TARGET FACEBOOK ACCOUNTS

during that period will constitute evidence of the TARGET OFFENSES.    The

Requested Location Information includes, but is not limited to: real-time E-911 Phase

II data or other precise location information concerning TARGET TELEPHONE 2

during the authorized period of interception; records reflecting the cell tower and

sector through which communications over TARGET TELEPHONE 2 and the

TARGET FACEBOOK ACCOUNTS were made ("cell-site location information")

during the 60 days preceding the date that the order is entered; and real-time cell-

site location information for TARGET TELEPHONE 2 and the TARGET FACEBOOK

ACCOUNTS during the authorized period of interception.   Because the government

seeks the disclosure of prospective cell-site location information pursuant to the

combined authority of 18 U.S.C. § 2703(c)(1)(A) and 18 U.S.C. § 3123, the Applicant

hereby certifies, pursuant to 18 U.S.C. § 3122, that the information likely to be

obtained is relevant to an ongoing criminal investigation conducted by the FBI and

discussed in the affidavit.

IT IS FURTHER REQUESTED that the Court direct Sprint Corp. and

Facebook Inc. to disclose the Requested Location Information concerning TARGET

TELEPHONE 2 and the TARGET FACEBOOK ACCOUNTS during the authorized

period of interception, and to initiate a signal to determine the location of TARGET

TELEPHONE 2 and the TARGET FACEBOOK ACCOUNTS on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and to furnish the information, facilities and technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user(s) of TARGET TELEPHONE 2 and the TARGET FACEBOOK ACCOUNTS, at any time of day or night, owing to the potential need to locate TARGET TELEPHONE 2 and the TARGET FACEBOOK ACCOUNTS outside of daytime hours.

IT IS FURTHER REQUESTED, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize delay of notice of the acquisition of the Requested Location Information for a period not to exceed 120 days from the date that the order is entered.  There is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705.   Providing immediate notice to the subscribers or users of TARGET TELEPHONE 2 would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  The period of delay may thereafter be extended by the court for good cause shown.

IT IS FURTHER REQUESTED that the Court order Assistant United States Attorney Lara K. Omps-Botteicher, or any other Assistant United States Attorney familiar with the facts of this case, to provide this Court with reports, on or about the

16

tenth, twentieth, and thirtieth day following the date of this Order, showing what progress has been made toward achievement of the authorized objectives and the need for continued interception.  If a report should become due on a weekend or holiday, it is requested that such report shall become due on the next business day thereafter.  If the Court's Order is extended for a further period of interception, it is requested that the application for extension may serve as the report on or about the thirtieth day.

IT IS FURTHER REQUESTED that no inventory or return of the results of the foregoing interception need be made, other than the above-required reports, before 90 days from the date of the expiration of this Order, or any extension of the Order, or at such time as the Court in its discretion may require.

IT IS FURTHER REQUESTED that, upon an ex parte showing of good cause to a judge of competent jurisdiction, the service of the above inventory or return may be postponed for a further reasonable period of time.

17

    IT IS FURTHER REQUESTED that the Court's Order, the Application, Affidavit, and all interim reports filed with this Court with regard to this matter be sealed until further order of this Court, except that the Clerk's Office may provide the United States with two certified copies of the Application, Affidavit, this Order, and Order to Service Provider.  The United States may provide one certified copy of each to the investigating officers and the service provider(s) as necessary to effectuate the Court's Order.

DATE: April 15, 2020

_____

Lara K. Omps-Botteicher
Assistant United States Attorney


SUBSCRIBED and SWORN to before me on April 15, 2020.

_____

Hon. Gina M. Groh
CHIEF UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA